IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    *Plaintiff*,

    v.                                                                                   Civ. No. 20-1335

2018 DODGE RAM VIN:3C63RRML6JG343568,
2017 YAMAHA RAPTOR VIN:5Y4AM86Y8HA108898,
2017 DODGE CHARGER VIN:2C3CDXEJ9HH643826,
2017 LEXUS IS 200T VIN:JTHBA1D2XH5046133,
2014 CHEVROLET CORVETTE VIN:1G1YF2D76E5131649,
2001 HARLEY DAVIDSON VIN:1HD1BJY111Y057181,
2012 DODGE CHALLENGER VIN:2C3DYBT4CH289895,
1963 CHEVROLET IMPALA VIN:31867J248D96,

$12,304.00 UNITED STATES CURRENCY,
$368.00 UNITED STATES CURRENCY,
$313.00 UNITED STATES CURRENCY,
$515.00 UNITED STATES CURRENCY,
$61.00 UNITED STATES CURRENCY,

    *Defendants-in-rem.*

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

Plaintiff, United States of America, brings this complaint in accordance with Supplemental Rule G(2) of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions, and alleges as follows:

**NATURE OF THE ACTION**

1.    This is a civil action to forfeit and condemn to the use and benefit of the United States of America property involved in violations of the Controlled Substances Act and 18 U.S.C. §§ 1956 and 1957 that is subject to forfeiture pursuant to 21 U.S.C. §§ 881(a)(4) and (6) and 18 U.S.C. §§ 981(a)(1)(A) and (C).

## DEFENDANT *IN REM*

2. The defendant *in rem* consists of the following:

   a. 2018 Dodge Ram VIN:3C63RRML6JG343568,
   b. 2017 Yamaha Raptor VIN:5Y4AM86Y8HA108898,
   c. 2017 Dodge Charger VIN:2C3CDXEJ9HH643826,
   d. 2017 Lexus IS 200T VIN: JTHBA1D2XH5046133,
   e. 2014 Chevrolet Corvette VIN:1G1YF2D76E5131649,
   f. 2001 Harley Davidson VIN:1HD1BJY111Y057181,
   g. 2012 Dodge Challenger VIN:2C3DYBT4CH289895,
   h. 1963 Chevrolet Impala VIN:31867J248D96,

(Hereafter collectively referred to as "Defendant Conveyances")

   i. $12,304 United States Currency,
   j. 368.00 United States Currency,
   k. $313.00 United States Currency,
   l. $515.00 United States Currency,
   m. $61.00 United States Currency

(Hereafter collectively referred to as "Defendant Currency").

3. The Defendant Property was seized by Homeland Security Investigations on February 27, 2020, in the District of New Mexico.

4. The Defendant Property is now, and during the pendency of this action will be, in the jurisdiction of this Court.

## JURISDICTION AND VENUE

5. The United States District Court for the District of New Mexico has subject matter jurisdiction under 28 U.S.C. §§ 1345, 1355(a) and 1356.

6. Venue for this civil forfeiture action is proper in this district pursuant to 28 U.S.C. §§ 1355 and 1395, as acts or omissions giving rise to the forfeiture took place in this district and the property is found in this district. Upon the filing of this complaint, the Defendant Property will be arrested by execution of a Warrant for Arrest *In Rem* in the District of New Mexico.

## FACTS

7. On or about March 2019, the Homeland Security Investigations (HSI) Albuquerque Office began a joint investigation with the Drug Enforcement Administration (DEA) and the New Mexico Region III Narcotics Task Force involving the alleged distribution of cocaine, cocaine base, and heroin from a residence located in the area of Espanola, New Mexico. During the initial investigation, HSI Albuquerque identified Ryan Rodriguez ("R. Rodriguez"), as a mid-level distributor of cocaine HCL (powder from) and cocaine base (commonly known as "crack"), Schedule II Controlled Substances.

8. As the investigation progressed, agents learned R. Rodriguez was part of the Mendoza Drug Trafficking Organization ("Mendoza DTO"). Jose Mendoza ("J. Mendoza") was the leader and organizer of the Mendoza DTO. The Mendoza DTO was responsible for distributing narcotics from various locations and subsequently laundering the proceeds from the narcotics sales through local credit unions and the purchase of numerous vehicles. Agents confirmed R. Rodriguez was distributing controlled substances for J. Mendoza.

9. On or about October 2, 2019, agents obtained a court authorization for the interception and recording of wire and electronic communications over R. Rodriguez's telephone number (505) 927-3167 ("R. Rodriguez Phone 1"). Authorization was renewed for this number on or about December 10, 2019. Additionally, on or about December 13, 2019, agents obtained a court authorization for the interception and recording of wire and electronic communications over J. Mendoza's telephone number (505) 670-2992 ("Mendoza Phone 1").

10. On October 2, 2019, Agents monitoring R. Rodriguez Phone 1 revealed a series of texts sent between R. Rodriguez (using R. Rodriguez Phone 1) and J. Mendoza (using Mendoza Phone 1) discussed a payment made by R. Rodriguez. In that same conversation, R. Rodriguez

also asked how much he still owed for an unspecified amount of narcotics J. Mendoza previously supplied to R. Rodriguez. At 2:57 PM, R. Rodriguez texted "Hey pichon Bridget give nat 600 bucks am out this guy bring 1.600 tonight", J. Mendoza replied at 3:06 PM "K brother".

11. From October 4, 2019 through October 6, 2019, a series of text messages were sent between R. Rodriguez and J. Mendoza, Bridget Archuleta ("B. Archuleta") and Natalie Mendoza ("N. Mendoza") discussing a payment made by R. Rodriguez and how much he still owed for narcotics previously supplied to him by J. Mendoza.

12. In a series of text messages, R. Rodriguez and N. Mendoza discussed how much R. Rodriguez owed J. Mendoza for a previously distributed supply of narcotics. On October 4, 2019 at 2:55 PM, R. Rodriguez texted N. Mendoza "What are we at on the bill". N. Mendoza replied, "I have to look at book when I get home". At 5:39 PM N. Mendoza texted "5500 minis 600 what I got from Bridget that day". On October 5, 2019, at 9:00 PM, R. Rodriguez texted J. Mendoza "Hey pichon tomorrow i will stop by and take u some cash", to which J. Mendoza replied "ok". On October 6, 2019, at 6:03 PM, R. Rodriguez texted J. Mendoza "Bridge taking a 1.000 bucks now", to which J. Mendoza replied "Ok" and then followed up with "You got work or no".

13. On or around October 7, 2019, Agents introduced an undercover agent (UCA) to the Mendoza DTO. The UCA established a working relationship with R. Rodriguez and purchased crack cocaine directly from R. Rodriguez and/or his associates.

14. The UCA purchased crack/cocaine from R. Rodriguez, and others working on his behalf, on October 7, 2019, October 15, 2019, October 29, 2019, and December 11, 2019. The intercepted communications of Rodriguez Phone 1 revealed that R. Rodriguez was working as a

mid-level cocaine distributor for the Mendoza DTO and that N. Mendoza was keeping books, picking up drug proceeds, as well as delivering drugs to Mendoza DTO clients.

15. On October 15, 2019, R. Rodriguez sold approximately 58.7 grams of crack cocaine to the UCA. The UCA paid $3,200 for the two ounces at $1,600 for each ounce.

16. Following the undercover purchaser, a series of text conversations ensued between R. Rodriguez and J. Mendoza. R. Rodriguez informed J. Mendoza that he had sold two ounces of crack cocaine for $1,000.00 each and was out of crack cocaine as a result. J. Mendoza told R. Rodriguez he would get him more (cocaine). R. Rodriguez also discussed giving money to N. Mendoza from the two ounces he just sold.

17. On October 19, 2019, N. Mendoza delivered a half kilogram of cocaine to B. Archuleta for R. Rodriguez.

18. On the October 29, 2019, R. Rodriguez agreed to sell two ounces of crack/cocaine to the UCA for $3000. On or around 2:31 PM, R. Rodriguez sent a proxy to meet the UCA and conduct the deal for him. Shortly after, at 2:49 PM, R. Rodriguez texted N. Mendoza, "What are we at on the bill" and N. Mendoza replied, "Once I get home I text it to you k". R. Rodriguez then texted J. Mendoza at 2:50 PM, "Hey pichon am out am senting [sic] nat with 3.000". R. Rodriguez then texted N. Mendoza "Can i meet you now", to which she replied, "I'm at my office". R. Rodriguez replied, "K be going that way now am in leaving Chamita now".

19. Agents then observed R. Rodriguez drive to the Las Cumbres Learning Center, 104 N. Coronado Ave. Espanola, NM, which is the place of employment for N. Mendoza. Aerial surveillance revealed a female, later identified as N. Mendoza, approach the driver's side of R. Rodriguez's Chevrolet Silverado and then return to the Las Cumbres building.

20. On or about December 10, 2019, R. Rodriguez agreed to sell the UCA eight ounces of crack/cocaine for $5,900. At 2:00 PM, R. Rodriguez exchanged a series of texts with J. Mendoza. R. Rodriguez texted, "Hey pichon the homie coming tomorrow around I he wants 4 of them i got 3 and half he bring 6.000 for sure he wants them all resdy [sic] rock i was going to see if u could trade me for these 2 cuz there power and give me 2 of the hard one i will get u all the cash tomorrow. Bridget give nat 550 so were at 5250 he bring me 6.000 at for sure at 1 tomorrow, he wants ready rock tho i gonna have them ready for him if u can pichon or i can sell him what i got", he then followed up with "U could even hold on to them till i get u the cash i need to make him 4 of ready rock". J. Mendoza replied "Ok".

21. Later at 6:13 PM, N. Mendoza, utilizing Mendoza Phone 1, called R. Rodriguez and stated that J. Mendoza did not understand what R. Rodriguez wanted because all they have is "powder". J. Mendoza could be heard in the background saying that all of them are "powder". During the call, N. Mendoza relayed information between R. Rodriguez and J. Mendoza about obtaining additional cocaine and turning it into crack/cocaine. Additionally, R. Rodriguez stated he would give N. Mendoza "6" the following day to pay the entire bill.

22. On December 11, 2019, at 11:34 AM, R. Rodriguez sent a text to J. Mendoza "Can I go by for those pichon". Soon after, agents observed a silver Toyota Camry, bearing expired NM plates 038SYN registered to Andrea Rodriguez ("A. Rodriguez"), the sister of R. Rodriguez, leave the residence of R. Rodriguez. R. Rodriguez was the passenger. At approximately 12:18 PM, aerial surveillance reported that the vehicle arrived at the residence of J. Mendoza and that R. Rodriguez exited the passenger side of the vehicle and entered the residence. At approximately 12:29, R. Rodriguez exited the residence and opened the trunk of J.

Mendoza's 2012 Dodge Challenger, grabbed a black bag and went back into the residence. R. Rodriguez returned to his residence thereafter.

23. At approximately 1:40 PM, R. Rodriguez texted with the UCA and stated he was on his way. Agents observed R. Rodriguez drive his 2008 Cadillac Escalade to meet with the UCA. R. Rodriguez entered the UCA vehicle and provided six ounces of crack/cocaine to the UCA, and the UCA provided $5,900 in payment. R. Rodriguez then departed in his vehicle and travelled directly to J. Mendoza's residence. Upon arrival at J. Mendoza's house, R. Rodriguez entered the residence, delivered the proceeds of the drug transaction and departed a few minutes later.

24. On January 8, 2020, R. Rodriguez transported 283 grams of crack/cocaine to J. Mendoza's residence after attempting to sell it to the UCA on January 7, 2020. At approximately 1:52 PM, Rodriguez left the residence. Mendoza departed his residence at approximately 2:35 PM and travelled to the residence of Rodriguez in the Defendant 2017 Dodge Charger. Mendoza then travelled to another location. While returning to his residence, he coordinated the sale of the 10 oz of crack/cocaine with a co-conspirator stating, "I'm coming home now and dam I see pigs all over the road let's let the sun go down".

25. During the following weeks, the Mendoza DTO continued its drug distribution and money laundering activity in the area of Espanola, New Mexico.

26. On February 27, 2020, agents executed a federal search warrant on the Mendoza residence in Medanales, New Mexico. Agents also executed federal seizure warrants on certain vehicles. During the execution of these warrants, agents identified additional vehicles that were either used to facilitate drug trafficking or were purchased with drug proceeds.

27. Agents searched the Defendant 2017 Lexus IS 200T and discovered approximately 423 grams of heroin and 229 grams of crack/cocaine and cocaine powder in the car. J. Mendoza had recently purchased the car for N. Mendoza.

28. Agents also identified and seized multiple ledgers detailing drug debts owed to the Mendoza DTO, or drug debts the Mendoza DTO owed to its source-of-supply. Analysis of the ledgers, which only contained partial year transactions, revealed that over 16 kilograms of cocaine was transacted for approximately $471,805. In excess of 13.701 kilograms of heroin was transacted for approximately $345,400. There were also transactions that could not be attributed to a specific drug that totaled approximately 41 kilograms for $1,138,405. Some examples of the drug-related ledger entries are as follows:

"...-30 CASH 60 WK"
"PD 8k Frist 9", "Wgt 300 grms.?"
"PD 12k 7/8"
 "...109,000 April"

An entry with handwritten notes describing an individual being arrested and owing $8,700.
A statement of "we have [illegible] on the street
to pay our bills".

"+55 R – 2000"
"14 Kick +500"
"14 Pete -500"
".7 WAL +165 (-90)"
"28 Jen (+1000)"
"55+2000 JD"
"24 +(1000) Judy"
"12 +(500) Pete"
"12+(500) R"
"14+(500) R"

"+23,000 Dark" and "+27,000 12/13 Light". These are references to heroin and cocaine sold by the Mendoza DTO.

29. There were ledger entries setting forth personal spending habits utilizing the drug proceeds. This included entries such as "$24,350" in the month of May, "$13,000" in the month of June, and "$17,000" in the month of January. There were also itemized descriptions of the spending, such as "5/10 3,000 Alb. Interior", "6/1 4300 Rims", "6/1 1500 Bills", and "6/21 5,000 64 CAR".

30. Agents also discovered tools of the illegal drug trade, including a money counter, firearms, phones, and computers.

31. Agents located the Defendant $12,304 in U.S. Currency in a safe in the master bathroom closet of the Mendoza residence. Agents located a combined total of $1,257 in U.S. Currency in other locations, including the master bedroom, the master bath, and the 2017 Lexus IS 200T.

32. J. Mendoza often used Nominee owners to purchase and register vehicles and to hold proceeds in bank accounts. He also obtained loans for vehicle purchases by submitting loan applications containing false claims of employment and/or inflated statements of income. He and Natalie Mendoza regularly used cash generated by sales of illegal drugs to make payments on the loans.

33. J. Mendoza's reported legitimate wage and earnings for 2016, 2017 and 2018 were as follows:

    i. 2016: $20,696;

    ii. 2017: $22,230;

    iii. 2018: $20,294.

J. Mendoza's 2019 earnings were commensurate with the 2016-2018 income pattern. However, J. Mendoza resigned from his job on November 1, 2019.

34. N. Mendoza's reported legitimate wage and earnings for 2016, 2017 and 2018 were as follows:

    i.     2016: $26,529;

    ii.     2017: $26,560;

    iii.     2018: $27,094.

Her 2019 earnings were commensurate with the 2016-2018 income pattern.

35. Investigation revealed the following Mendoza cash transactions and/or purchases not attributable to legitimate sources in 2018, 2019 and 2020:

    i.     2018: Approximately 140 cash transactions totaling $142,952, which includes $133,452 in cash transactions at banking institutions (cash deposits, loan payments, or real property payments) and $9,500 in cash transactions for vehicle purchases or down payments.

    ii.     2019: Approximately 174 cash transactions totaling $265,590, which includes $162,508 in cash transactions at banking institutions (cash deposits, loan payments, or real property payments) and $103,082 in other cash transactions, including vehicle purchases, vehicle down payments, or other cash transactions found in the ledgers.

    iii.     January 2020 through February 27, 2020: Approximately 26 cash transactions totaling $31,030, which includes cash deposits, loan payments, or other cash transactions found in ledgers.

36. The following are specific examples of Mendoza cash transactions:

a. 8/17/2015 - $7,000 used as a down payment for the Defendant 2012 Dodge Challenger financed by J. Mendoza.

b. 3/23/2017 - $10,000 used for the purchase of a 2015 GMC Yukon by N. Mendoza.

c. 4/7/2017 - $3,500 used for the purchase of a 1963 Chevrolet Impala by N. Mendoza.

d. 12/27/2017 - $3,500 used for the down payment of a 2018 Yamaha Raptor VIN 5Y4AM863XJA101171 for N. Mendoza.

e. 12/27/2017 - $3,500 used for the down payment of the Defendant 2018 Yamaha Raptor for N. Mendoza.

f. 3/6/2019 - $25,022 used to purchase a cashier's check by N. Mendoza on the checking account of J. Mendoza. J. Mendoza used the funds as a down payment for the purchase of the Defendant 2018 Dodge Ram 3500.

g. 03/14/2019 - $9,000 loan payment on J. Mendoza's Medanales residence.

h. 03/19/2019 - $4,500 used to purchase a 1964 Impala under a Nominee.

i. 03/25/2019 - $9,000 loan payment on J. Mendoza's Medanales residence.

j. 05/15/2019 - $9,000 used as a down payment for the Defendant 2017 Dodge Charger, which was then financed and registered under a Nominee.

k. 07/17/2019 - $3,000 loan payment on J. Mendoza's Medanales residence.

l. 10/10/2019 - $28,000 used as a down payment for a 2018 Cadillac Escalade by N. Mendoza.

m. 01/2/2020 - $5,000 for the payment of custom work for a 1964 Impala.

n. 09/23/2019 - $3,000 cash deposit in N. Mendoza's account.

o. 10/11/2019 - $1,500 cash deposit in N. Mendoza's account.

11

    p. 10/21/2019 - $2,810 cash deposit in J. Mendoza's account.

    q. 12/2019 - $14,000 used for a roof and other spending.

    r. 01/21/2019 - $1,200 cash deposit used for a loan payment on the Defendant 2018 Dodge Ram 3500.

    s. 01/24/2019 - $5,000 used for a trip to Mexico to meet with source of supply.

    37.    On or about March 6, 2019, J. Mendoza purchased the Defendant 2018 Dodge Ram for approximately $87,000. J. Mendoza and N. Mendoza provided cash to a bank teller in exchange for a $25,000 cashier's check. The check was used for the down payment for the Ram. The purchase was also funded by a loan obtained from U.S. Bank. On the loan application, J. Mendoza stated he worked at Monarch Waste Technology earning $8,000 a month as an engineer. No records have been found showing that J. Mendoza received wages from this company.

    38.    On or about February 14, 2020, J. Mendoza purchased the Defendant 2017 Lexus I200T as a birthday present for N. Mendoza. J. Mendoza made a $2,000 cash down payment using funds held in a bank account under the nominee names of Jennifer DeVargas and Brittney Vigil. On the loan application, J. Mendoza stated he earned $80,000 at Los Alamos National Labs and had a 4-year tenure there. In fact, J. Mendoza resigned his position at Los Alamos National Labs on November 1, 2019, after working there only 5 months stating in an intercepted call to R. Rodriguez, "I was about to get my clearance bro the feds get into your shit bro I didn't want that". Wage and earning records revealed J. Mendoza earned approximately $13,702.44 during the five months he worked there.

    39.    On or about August 17, 2015, J. Mendoza purchased the Defendant 2012 Dodge Challenger using a $7,000 down payment and a loan. On the loan application he stated he was

employed by Ellirray's Trucking with a monthly $3,000 salary; however, no records have been found showing that J. Mendoza received wages from this company.  From 9/17/2015 through 12/2/2019, J. Mendoza and N. Mnedoza made approximately 26 payments for the vehicle using unexplained cash deposits totaling $23,795.

40. On or about March 2, 2019, J. Mendoza caused the Defendant 2001 Harley Davidson to be registered in the name of B. Vigil. A $3,500 payment for a "bike" was documented in one of the drug ledgers.

41. On or about April 2019,  J. Mendoza obtained the Defendant 2014 Chevrolet Corvette Stingray from an unknown source. He registered the vehicle under a Nominee Renee Naranjo.

42. On or about May 15, 2019, J. Mendoza purchased the Defendant 2017 Dodge Charger using a $9,000 down payment and loan under the Nominee B. Vigil. The $9,000 was documented in one of the drug ledgers.

43. On or about February 21, 2020, J. Mendoza obtained the Defendant 1963 Chevrolet Impala.  Intercepts of J. Mendoza's phone revealed he traded the two Polaris RZRs for the Impala. One of the Polaris RZRs was titled under the name of Nominee B. Vigil.

44. On or about December 2017, N. Mendoza purchased the Defendant 2017 Yamaha Raptor using a credit union loan and a $3,500 cash down payment.  From 1/22/2018 through 10/21/2018, N. Mendoza made 18 loan payments using cash totaling $4,525.

## FIRST CLAIM FOR RELIEF

45. The United States incorporates by reference the allegations in paragraphs 1 through 44 as though fully set forth.

46. Title 21, United States Code, Section 881(a)(6) subjects to forfeiture "[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter."

47. Defendant Conveyances and Defendant Currency were furnished, or intended to be furnished, in exchange for a controlled substance, or constitutes proceeds traceable to such an exchange, or were used or intended to be used to facilitate a violation of the Controlled Substances Act and is thus subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

## SECOND CLAIM FOR RELIEF

48. The United States incorporates by reference the allegations in paragraphs 1 through 44 as though fully set forth.

49. Title 18, United States Code, Section 981(a)(1)(A) subjects to forfeiture property involved in a transaction or attempted transactions in violation of 18 U.S.C. §§ 1956 or 1957, or property traceable to such property.

50. The Defendant Conveyances and Defendant Currency were involved in transactions or attempted transactions in violation of 18 U.S.C. §§ 1956 or 1957 or are traceable to such transactions and are thus subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## THIRD CLAIM FOR RELIEF

51. The United States incorporates by reference the allegations in paragraphs 1 through 44 as though fully set forth.

52. Title 18, United States Code, Section 981(a)(1)(C) subjects to forfeiture property which constitutes or is derived from proceeds traceable to any offense constituting specified unlawful activity, including violation of 18 U.S.C. §§ 1956 and 1957, or conspiracy to commit such offense(s).

53. The Defendant Conveyances and Defendant Currency constitute or are derived from proceeds traceable to a violation(s) of 18 U.S.C. §§ 1956 and 1957, or conspiracy to commit such offense(s) and are thus subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

### FOURTH CLAIM FOR RELIEF

54. The United States incorporates by reference the allegations in paragraphs 1 through 44 as though fully set forth.

55. Title 21, United States Code, Section 881(a)(4) subjects to forfeiture "[a]ll conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property in violation of this subchapter."

56. Defendants 2017 Lexus, 2012 Dodge Challenger, and 2017 Dodge Charger were used or intended to be used to facilitate the transportation, sale, receipt, possession or concealment of illegal controlled substance and are thus subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(4).

WHEREFORE: Plaintiff seeks arrest of Defendant Conveyances and Defendant Currency and forfeiture of same to Plaintiff, determination of the validity and priority of claims of the Claimants and any Unknown Claimants to the Defendant Conveyances and Defendant Currency, costs and expenses of seizure and of this proceeding, and other proper relief.

Respectfully submitted,

JOHN C. ANDERSON
United States Attorney

STEPHEN R. KOTZ
Assistant U.S. Attorney
P.O. Box 607
Albuquerque, NM 87103
(505) 346-7274

## 28 U.S.C. § 1746 Declaration

I am a Special Agent with the Department Homeland Security who has read the contents of the Complaint for Forfeiture *In Rem* to which this Declaration is attached; and the statements contained in the complaint are true to the best of my knowledge and belief.

I declare under penalty of perjury and the laws of the United States of America that this Declaration is true and correct, except as to matters stated on information and belief, and as to those matters I believe them to be true.

Dated: 12/21/2020

Jeremy Arellano, Special Agent
Department of Homeland Security

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

## DEFENDANTS
2018 DODGE RAM, ET.AL.

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

[X] 1 U.S. Government Plaintiff
[ ] 2 U.S. Government Defendant
[ ] 3 Federal Question (U.S. Government Not a Party)
[ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated *or* Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated *and* Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [X] 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane / 365 Personal Injury - Product Liability | 690 Other | 423 Withdrawal 28 USC 157 | 400 State Reapportionment |
| 130 Miller Act | 315 Airplane Product Liability / 367 Health Care/ Pharmaceutical Personal Injury Product Liability |  | **PROPERTY RIGHTS** | 410 Antitrust |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander |  | 820 Copyrights | 430 Banks and Banking |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers' Liability / 368 Asbestos Personal Injury Product Liability |  | 830 Patent | 450 Commerce |
| 151 Medicare Act | 340 Marine |  | 840 Trademark | 460 Deportation |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability / **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | 470 Racketeer Influenced and Corrupt Organizations |
| 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle / 370 Other Fraud | 710 Fair Labor Standards Act | 861 HIA (1395ff) | 480 Consumer Credit |
| 160 Stockholders' Suits | 355 Motor Vehicle Product Liability / 371 Truth in Lending | 720 Labor/Management Relations | 862 Black Lung (923) | 490 Cable/Sat TV |
| 190 Other Contract | 360 Other Personal Injury / 380 Other Personal Property Damage | 740 Railway Labor Act | 863 DIWC/DIWW (405(g)) | 850 Securities/Commodities/ Exchange |
| 195 Contract Product Liability | 362 Personal Injury – Medical Malpractice / 385 Property Damage Product Liability | 751 Family and Medical Leave Act | 864 SSID Title XVI | 890 Other Statutory Actions |
| 196 Franchise |  | 790 Other Labor Litigation | 865 RSI (405(g)) | 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | 893 Environmental Matters |
| 210 Land Condemnation | 440 Other Civil Rights / **Habeas Corpus:** |  | 870 Taxes (U.S. Plaintiff or Defendant) | 895 Freedom of Information Act |
| 220 Foreclosure | 441 Voting / 463 Alien Detainee |  | 871 IRS—Third Party 26 USC 7609 | 896 Arbitration |
| 230 Rent Lease & Ejectment | 442 Employment / 510 Motions to Vacate Sentence |  |  | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 240 Torts to Land | 443 Housing/ Accommodations / 530 General | **IMMIGRATION** |  | 950 Constitutionality of State Statutes |
| 245 Tort Product Liability | 445 Amer. w/Disabilities - Employment / 535 Death Penalty | 462 Naturalization Application |  |  |
| 290 All Other Real Property | 446 Amer. w/Disabilities - Other / **Other:** / 540 Mandamus & Other | 465 Other Immigration Actions |  |  |
|  | 448 Education / 550 Civil Rights |  |  |  |
|  | 555 Prison Condition |  |  |  |
|  | 560 Civil Detainee - Conditions of |  |  |  |

## V. ORIGIN *(Place an "X" in One Box Only)*

[X] 1 Original Proceeding
[ ] 2 Removed from State Court
[ ] 3 Remanded from Appellate Court
[ ] 4 Reinstated or Reopened
[ ] 5 Transferred from Another District *(specify)*
[ ] 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
21 U.S.C. §§ 881(a)(4) and (6), 18 U.S.C. §§ 981(a)(1)(A) and (C)
Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
[ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE _____ DOCKET NUMBER _____

DATE: 12/22/2020
SIGNATURE OF ATTORNEY OF RECORD: */s/*

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____